*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
MONAHAN, STEPHENS, and DEERWESTER
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**Antonio A. VILLAGOMEZ-GARCIA**
Sergeant (E-5), U.S. Marine Corps
*Appellant*

**No. 202000269**

Decided: 29 November 2021

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge:
Andrea C. Goode

Sentence adjudged 17 September 2020 by a special court-martial convened at Marine Corps Recruit Depot San Diego, California, consisting of a military judge sitting alone. Sentence in the Entry of Judgment: reduction to E-1, confinement for six months, and a bad-conduct discharge.

For Appellant:
*Captain Kimberly D. Hinson, JAGC, USN*

For Appellee:
*Lieutenant Jennifer M. Joseph, JAGC, USN*
*Lieutenant Gregory A. Rustico, JAGC, USN*

_____

**This opinion does not serve as binding precedent, but
may be cited as persuasive authority under
NMCCA Rule of Appellate Procedure 30.2.**

_____

PER CURIAM:

Appellant was convicted, pursuant to his pleas, of violating Article 134, Uniform Code of Military Justice [UCMJ],[1] for transporting an alien for financial gain.[2]

Appellant asserts two assignments of error:[3] (1) the adjudged sentence is inappropriately severe as it does not fit the nature of the offense and his outstanding character; and (2) Appellant was prejudiced because the preliminary hearing was presided over by a biased preliminary hearing officer.[4]

We find no prejudicial error and affirm.

## I. BACKGROUND

In March 2019, Appellant agreed with another Marine from his unit that he would drive to eastern San Diego County, California, near the border with Mexico to "give people rides" for $500 per person in order to make some extra money. Appellant received several messages on a messaging application, as well as phone calls and text messages from other individuals, giving him directions to a location for a pick-up.

Appellant arrived at the specified location and saw three people emerge from a bush. He unlocked his doors, let them into his vehicle, and came to the realization that at least one of them had entered the United States illegally.

_____

[1] 10 U.S.C. § 934.

[2] 8 U.S.C. § 1324(a)(1)(A)(ii).

[3] Appellant filed a motion for leave to file a motion to amend brief and assignment of error, withdrawing his third assignment of error, on 5 May 2021.

[4] We have reviewed the second Assignment of Error, which was raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and find it to be without merit. *United States v. Matias*, 25 M.J. 356, 363 (C.M.A. 1987).

Upon receiving further directions from various individuals who contacted him on his cell phone, Appellant drove circuitously around the San Diego area until he was instructed to head towards Long Beach, California, with his passengers. On the way, and in the vicinity of Marine Corps Base Camp Pendleton, Appellant was pulled over and arrested by agents of the United States Customs and Border Protection.

Appellant was charged with four specifications of violating Article 134 UCMJ, for transporting and conspiring to transport aliens within the United States to remain illegally for private financial gain, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii) and two specifications of violating Article 82, UCMJ for soliciting others to bring in aliens in violation of 8 U.S.C. § 1324(a)(2).

Although the charges were originally referred to a general court-martial, the convening authority and Appellant subsequently reached a plea agreement, wherein the Appellant would plead guilty to one specification of violating Article 134, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii)at a special court-martial.

## II. DISCUSSION

We review sentence appropriateness de novo.[5] We must determine the appropriateness of a court-martial sentence in light of the underlying facts adduced at trial, to include all extenuating and mitigating circumstances.[6] We may not affirm any portion of a sentence that we find excessive.[7] Generally, sentence appropriateness should be judged by "individualized consideration" of the particular accused on the basis of the "nature and seriousness of the offense and the character of the offender."[8] As we recently articulated in *United States v. Casuso*, we question an appellant's "claim of inappropriate severity when the sentence he received was within the range of punishment he was expressly willing to accept in exchange for his pleas of guilty."[9]

---

[5] *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006).

[6] *United States v. Guinn*, 81 M.J. 195, 199 (C.A.A.F. 2021).

[7] *United States v. Jessie*, 79 M.J. 437, 440 (C.A.A.F. 2020).

[8] *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982) (internal quotation and citation omitted).

[9] *United States v. Casuso*, No. 202000114, 2021 CCA LEXIS 328 at *8 (N-M. Ct. Crim. App. June 30, 2021) (unpublished).

Here, Appellant claims six months' confinement and a bad-conduct discharge is an inappropriately severe sentence in light of the mitigating evidence presented at trial. Specifically, Appellant argues that his record of service along with his cooperation with a Naval Criminal Investigative Service [NCIS] investigation following his arrest should result in a reduced sentence. Ultimately, Appellant requests disapproval of confinement in excess of 30 days and disapproval of the bad-conduct discharge.

We disagree. Appellant and the convening authority specifically negotiated: a minimum of two months and a maximum of six months' confinement; that Appellant would not receive any adjudged forfeitures; that any automatic forfeitures would be deferred and waived; and that a bad-conduct discharge would be in the permissible range of punishments. In exchange, Appellant agreed to plead guilty to one specification of violating Article 134, and the convening authority agreed to withdraw and dismiss the remaining charges and specifications and allow Appellant to plead at a lower forum than originally referred. Following the conclusion of the guilty plea and sentencing hearing, the convening authority lived up to his side of the plea agreement. Appellant, thus, received the benefit of the bargain he freely entered.

Even if we were to disregard the terms of Appellant's plea agreement, we would still find that the sentence contained in the Entry of Judgment was not inappropriately severe. We acknowledge that Appellant presented significant evidence in extenuation and mitigation, including his record of service, evaluations, awards, and character witnesses. Furthermore, he presented evidence of his service to NCIS as a cooperating witness. However, his crime of transporting for financial gain an alien who had entered the United States illegally was serious. The gravity of his offense was compounded by the fact that he reached out to another person on the night of the incident and offered money to that person to assist Appellant in the scheme. Considering all the circumstances, we determine Appellant's sentence to be appropriate.

### III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the findings and sentence are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights occurred.[10]

---

[10] Articles 59 & 66, UCMJ.

The findings and sentence are **AFFIRMED**.

FOR THE COURT:

RODGER A. DREW, JR.
Clerk of Court